BOARD OF DIRECTORS OF CHICAGO THEO. SEMINARY
*v.*
THE PEOPLE *ex rel.* Raymond, County Collector.

*Opinion filed February 20, 1901—Rehearing denied April 9, 1901.*

189 439
f193 1619
189 439
a188US 662
a23 SC 386
189 439
107a 4 53
189 439
e210 350
e210 351
112a 7
189 439
113a 5 477

1. TAXES—*what property of Chicago Theological Seminary is exempt.* Section 5 of the act of 1855, incorporating the Chicago Theological Seminary, which provides "that the property, of whatever kind and description, belonging or appertaining to said seminary, shall be forever free and exempt from all taxation for all purposes," refers only to property used in immediate connection with the seminary, and not to property owned, rented or held by the seminary as an investment, even though the income thereof is used solely for school purposes. (*People v. Theological Seminary*, 174 Ill. 177, followed.)

2. RES JUDICATA—*effect where both parties rely upon different former judgments as res judicata.* Where the defendant in an application by the collector for judgment of sale for taxes sets up former judgments of the county court establishing an exemption in its favor, and the collector insists upon a later judgment of the Supreme Court, involving the same question and rendered in the collector's favor upon appeal from one of the judgments relied upon by the defendant, the later judgment of the Supreme Court controls.

3. PRACTICE—*duty of lower court where cause is remanded for further proceedings in accordance with views expressed.* If the Supreme Court announces a particular view of the law and reverses the judgment and remands the case for further proceedings in accordance with the views announced, the court below is bound to examine the opinion and apply the particular views of the law announced therein, and render such judgment as is the necessary result of the application of such views.

4. SAME—*binding force of judgment in case of general remandment.* Even where a cause is remanded generally by a court of review, it is not again open in the lower court as to questions presented by the record and decided by the court of review.

5. SAME—*effect of failure to file transcript of remanding order within two years.* The effect of a failure of either party to file a transcript of the remanding order in the lower court within two years, as is specified in section 84 of the Practice act, is not that the cause of action shall be considered as abandoned, but only that the particular suit shall be so considered.

6. JUDGMENTS AND DECREES—*failure to file transcript of remanding order does not affect finality of judgment.* Failure to file a transcript of the remanding order of the Supreme Court in the inferior court does not affect the validity and binding force of the Supreme Court's judgment as to questions thereby determined which are in-

volved in a second suit between the same parties concerning the same subject matter but upon a different cause of action.

7. SAME—*when rule against disturbing conditions created on the faith of judgment does not apply.* The purchase of property by a corporation upon the faith of judgments of an inferior court so construing the charter of the corporation as to exempt from taxation all property held by it, does not in any manner affect the right of the Supreme Court to render a judgment giving a different construction to such charter.

APPEAL from the County Court of Cook county; the Hon. R. W. S. WHEATLEY, Judge, presiding.

This is an appeal from a judgment, rendered by the county court of Cook county on October 24, 1900, upon the application of the county treasurer and *ex officio* county collector of that county for judgment for the general taxes of 1899 against lands of the appellant.

Appellant, upon the trial below, filed objections to the entry of judgment against its property. These objections were: (1) That the property of appellant under its charter was exempt from taxation; (2) that, for a number of years prior to July, 1900, the county collector of Cook county in each year had made application in the county court of that county for judgment for the general taxes of the preceding year, and that, at each of said applications, appellant had claimed that its property was free and exempt from taxation under its charter, and said county court had rendered judgment sustaining such objections; that each of said judgments remains in full force and unreversed; that the proceedings leading up to the same were between the same parties; and that the only question, raised on each of said applications, was whether appellant's charter exempted all its real estate from taxation, although such real estate was not occupied by the institution of learning of the said appellant. The third objection seems to be, that the effort of the county treasurer and *ex officio* collector of Cook county to obtain judgment for the taxes of 1899 against

appellant's lands, described in its objections, under and in pursuance of the revenue laws of Illinois, is in some way a violation of appellant's charter, viewed as a contract between appellant and the State of Illinois.

It was stipulated in open court on the trial of the cause, that some of the lots described in appellant's objections are vacant, and some are improved and rented to tenants; that all the income of the property described in the objections is used for the object contemplated in appellant's charter, and that all of said lots were bought by appellant or given to it for the promotion of the objects named in its charter; that appellant is the owner of other lots, upon which it has constructed buildings wherein is given instruction by professors and instructors to carry out the objects of its charter; that the lots occupied by the buildings, where said instruction is given, are not taxed; that, since February 15, 1855, when its charter was passed, appellant, having accepted the same, has expended in the erection and purchase of buildings upon the lands named in the objections, and upon other lots owned by it, an amount exceeding $200,000.00; and that a large number of students have been, and are being, instructed by said corporation according to its charter.

The county court, upon the trial below, overruled the objections so made by appellant, and rendered judgment against appellant's property, not occupied by buildings used for the purposes of its seminary and for the purposes of instruction by its professors and instructors, and in favor of the People for the taxes, etc., of 1899, and interest, penalties and costs.

DAVID FALES, (GWYNN GARNETT, of counsel,) for appellant.

JULIUS A. JOHNSON, County Attorney, FRANK L. SHEPARD, Assistant County Attorney, and W. F. STRUCKMANN, Assistant County Attorney, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The first objection, made by appellant to the entry of judgment by the county court against its lands, is that its charter exempts from taxation all of its real estate. We have already passed upon this question in *People* v. *Theological Seminary,* 174 Ill. 177. In the latter case, we held that section 5 of the act of 1855, incorporating the appellant, which provides "that the property, of whatever kind or description, belonging or appertaining to said seminary, shall be forever free and exempt from all taxation for all purposes whatsoever," refers only to property used in immediate connection with the seminary, and does not include other property which may be owned, rented or held by the said seminary as an investment, even though the income thereof is used solely for school purposes. We are satisfied with the conclusions reached in *People* v. *Theological Seminary, supra,* and decline to further discuss the question there passed upon and settled. The objection, made by the appellant based upon the ground of an alleged impairment of the obligation of its contract with the State of Illinois, is involved in this first objection and disposed of by the decision in relation thereto. It need not be separately considered. This court has merely construed appellant's charter, and given full force and effect to it as so construed.

*Second*—It appears that, in each year for a number of years prior to 1897, appellant objected to the entry of judgment for general taxes in the county court against certain of its lands upon the alleged ground that said lands were exempt from taxation. It is insisted by the appellant that, in each of the applications so made for judgment for taxes against its lands, the issue was whether such lands, upon which its institution of learning was not located, were subject to taxation or not. The contention, now made in the present case, is that

the judgments, so rendered by the county court in these former years in its favor sustaining the objections so made by it, are in the nature of estoppels, and constitute a *res judicata* against the prosecution of the present proceeding.

It is well settled by the decisions of the Supreme Court of the United States and of this court, that, where a former adjudication is relied upon as an absolute bar, there must be, as between the actions, identity of parties, of subject matter and of cause of action. But it is also well settled that, when the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue, or points controverted, upon the determination of which the finding or verdict was rendered. Where some controlling fact or question, material to the determination of both causes, has been adjudicated in the former suit by a court of competent jurisdiction, and the same fact or question is again at issue between the same parties, its adjudication in the first will, if properly presented, be conclusive of the same question in the later suit, irrespective of the question whether the cause of action is the same in both suits or not. This is sometimes denominated an estoppel by verdict. In order that the judgment in the first suit shall operate as an estoppel in the second suit, it must appear on the face of the record, or must be shown by extrinsic evidence, that the precise question was raised and determined in the first suit. "In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action." (*Cromwell* v. *County of Sac*, 94 U. S. 351; *Washington, Alex-*

*andria and Georgetown Steam Packet Co.* v. *Sickles,* 24 How. 333; *Bissell* v. *Spring Valley Township,* 124 U. S. 225; *Hanna* v. *Read,* 102 Ill. 596; *Wright* v. *Griffey,* 147 id. 496; *Leopold* v. *City of Chicago,* 150 id. 568; *Louisville, New Albany and Chicago Railway Co.* v. *Carson,* 169 id. 247; *Markley* v. *People,* 171 id. 260; *Young* v. *People,* 171 id. 299). The burden of proof is always upon the defendant, who pleads *res judicata* because of a former judgment, to set up that judgment, and show what was determined by it, and what is common to the subsequent action. The proof must be clear, certain and convincing. (21 Am. & Eng. Ency. of Law, pp. 199, 200, 202). If there be an uncertainty as to what was the precise question raised and determined in the former suit, as, for example, if it appears that several distinct matters may have been litigated, upon one or more of which the judgment may have been passed, without indicating which of them was litigated, the whole subject matter of the action will be at large, and open to any new contention. But this uncertainty may be removed by extrinsic evidence showing the precise points involved, and determined in the former action. (*Markley* v. *People, supra*).

The present action is not a prosecution for or upon the same claim or demand as that involved in the actions in former years. The present proceeding is an application by the county collector for a judgment for taxes delinquent for the year, 1899, only, whereas the former judgments were rendered upon applications for taxes delinquent for other and different years. Hence, in the case at bar, the burden of proof was upon the appellant to show that the question, determined by the former suits and judgments, was precisely the same question, as that which is involved here. But the proof is not altogether clear, that the same question was involved in all the prior proceedings and judgments insisted upon as *res judicata* by the appellant. In some years, when objections were made, the proof shows the making of a general objection,

that the lands involved were exempt from taxation. From the general character of the objection, however, it does not appear whether the exemption claimed was based upon the language of appellant's charter, or whether the exemption was claimed under the provisions of the general Revenue law of the State. Section 2 of the general Revenue act provides, that "all property of institutions of learning, including the real estate on which the institutions are located, not leased by such institutions or otherwise used with a view to profit," shall be exempt from taxation. Whether the objections, insisting upon exemption, referred to this provision of the general Revenue law, or to section 5 of appellant's charter, is not altogether clear as to many of the judgments rendered prior to 1897. Then, again, the proof shows that, in many of the years when objections were made, several objections, as well as that relating to exemption, were made to the entry of judgment, and it is not altogether clear whether the county court reached its conclusions in favor of the defendant because of the objection in relation to exemption, or because of some other one of the objections so made. We are not, therefore, satisfied that, upon the records themselves of the former judgments, or upon the oral proof introduced in the case, the same question here involved was passed upon, and decided by the former judgments of the county court. But, for the purposes of the present discussion, it may be admitted, that it was decided in the former proceedings in the county court, that the lands of the appellant, which were vacant and those which were improved and rented to outside parties not including the lots occupied by the buildings used exclusively for the purposes of the seminary, were not subject to taxation. Even if it was so decided, there is a sufficient reason why such former judgments by the county court cannot here be set up as establishing former recoveries, and as amounting to *res judicata.*

When application was made in 1897 to the county court for judgment for the general taxes of 1896, the appellant filed the objection, that its said tracts of land and lots were exempt. from taxation, and the county court sustained the objection of the appellant so made, and rendered judgment to that effect, and refused the application of the county treasurer and *ex officio* county collector for judgment for the general taxes of 1896. Thereupon, an appeal was taken by the People, úpon the relation of the county treasurer, to ·this court from the judgment, so entered in 1897 by the county court, sustaining appellant's objection.  This court reversed the judgment of the county court, and remanded the cause for further proceedings in accordance with the views expressed in the opinion in the case of *People* v. *Theological Seminary, supra.*  The judgments, rendered by the county court sustaining the objection in question in former years, cannot prevail as estoppels as against the judgment of reversal entered by this court on June 18, 1898, as appears from the case of *People* v. *Theological Seminary, supra.*  The identical question, which, according to appellant's contention, was, in these former judgments, decided in favor of appellant, was decided against appellant and in favor of appellee in the decision rendered by this court in 1898.

This record presents a case where the defendant sets up a former judgment in its favor as an estoppel or *res judicata,* and the plaintiff insists upon another and later judgment, involving the same question, rendered in favor of such plaintiff, by a court of superior and appellate jurisdiction.  Under such a state of facts, the old common law rule was, that an estoppel against an estoppel opens up the whole matter, and sets it at large.  In other words, under the common law rule it was held that one estoppel neutralizes the other, and the question is left to be tried over.  (Bigelow on Estoppel,—5th ed.—p. 360; *Shaw* v. *Broadbent,* 129 N. Y. 114).  If this common law rule be applied here, so that the former judgments of the county

court deciding the question in favor of the appellant, and the later judgment of this court deciding the question in favor of the appellee, are to be held to neutralize each other, so as to leave the question open to be tried over, we are of the opinion that the decision of the county court in the case at bar overruling the objection as to exemption made by appellant on the trial below, was correct, being in accordance with the views expressed in *People* v. *Theological Seminary, supra.*

But we are inclined to hold that, under the circumstances above detailed, the last judgment, which is the judgment rendered by this court, is the controlling one. In support of the position, that the last judgment is the controlling one, VanFleet, in his work on Former Adjudication (vol. 1, p. 505), says: "This must be so, because each case calls upon the adverse party to show all the causes he has why the relief demanded should not be granted; and, if he has a judgment which is a defense, he must bring it forward, otherwise the adjudication against him will bar his right to claim under that judgment, as well as under any other defense." In 1897, when application was made for judgment against appellant's land for the taxes of 1896, it did not set up the prior judgments, rendered by the county court in its favor, as a defense by way of estoppel, or *res judicata.* Appellant should have then relied, as a defense, upon such alleged former recoveries, as well as upon the objection that its property was exempt from taxation. Inasmuch as appellant did not set up such former recoveries as a defense, the adjudication made against it by this court is a bar to its right to claim under such former judgments as estoppels.

In *Cooley* v. *Brayton*, 16 Iowa, 10, it was held that the last decree, rendered by the same court, affecting the rights of the same parties, and relating to the same subject matter, governed, and that a former decree, to be made effective as a prior adjudication, should have been pleaded as such.

In *Bateman* v. *Railroad Co.* 96 Mich. 441, the same doctrine was announced, and the case of *Cooley* v. *Brayton, supra,* was approved of; and it appeared in the *Michigan case* that the last judgment was held to govern and control, not only because it was last in point of time, but because it was the judgment of a superior tribunal, to-wit, the Supreme Court of the State. (See also *Semple* v. *Wright*, 32 Cal. 659; *Semple* v. *Ware*, 42 id. 619; *Sharon* v. *Sharon*, 84 id. 424; 1 Freeman on Judgments,—4th ed.— sec. 332).

It is, however, claimed on the part of the appellant, that the judgment, rendered by this court in *People* v. *Theological Seminary, supra,* was a judgment reversing and remanding the cause, and that, for that reason, it cannot be insisted upon as an estoppel or former adjudication. The judgment, rendered by this court in the case last referred to, was not merely a judgment reversing and remanding the cause for further proceedings, but it was a judgment, which reversed the judgment of the county court and remanded the cause "for further proceedings in accordance with the views herein expressed," that is, in accordance with the views expressed in the opinion in that case. By the terms of such a judgment the county court could not proceed otherwise than in accordance with the views expressed in the opinion in that case. The opinion held that the property, used in immediate connection with the seminary, was exempt from taxation, but that other property, owned by appellant which was rented or held by the seminary as an investment, was subject to taxation. Hence, the county court could not have rendered any other judgment, after the reversal by this court, than a judgment overruling the objection, which had been made before the county court. Where this court announces a particular view of the law, and reverses and remands the case for further proceedings in accordance with the views announced by it, the court below is bound to examine the opinion, and apply the

particular views of the law announced in the opinion, and render such judgment as is the necessary result of the application of such views.

Whatever may be the rule upon this subject in other jurisdictions, a judgment, rendered by this court reversing and remanding a cause for further proceedings in accordance with the views expressed in the opinion rendered, is a final judgment, so far as the questions decided in the opinion are concerned. This is so, because of the language of section 80 of the Practice act, which provides as follows: "In all cases of appeal and writ of error, the Supreme Court or Appellate Court may give final judgment and issue execution, or remand the cause to the inferior court, in order that an execution may be there issued, or that other proceedings may be had thereon." In *Boggs* v. *Willard*, 70 Ill. 315, this section of the Practice act was referred to and quoted, and, in connection with such quotation, it was said: "In numerous cases, it has been held, in this State, that, where a case has been tried in this court, and remanded with specific directions to dismiss the bill, or do some other act, the court below has no power to do anything but carry out the specific directions. * * * Had we, in the case, when it was before us, rendered a final decree dismissing the bill, no one would have claimed that the suit was pending thereafter, or that there had not been a final hearing or trial. And why? Because this court had considered the evidence as applied to the pleadings, and had fully determined the rights of the parties as presented by the case. And in what does the decree rendered in this court differ from a decree of dismissal? We, after fully considering the pleadings and evidence, decided that the complainant had not shown a right to the relief sought, and that the court below erred in not dismissing the bill, and then reversed the decree, and remanded the cause for further proceedings in conformity with the opinion. Under such specific directions, the court below

could only act in conformity with the opinion, and dismiss the bill. All the questions had been finally heard, tried and decided on the appeal in this court. If the decree of this court did not finally determine the case and all of its parts, it is impossible for us to comprehend how a case can be finally heard and tried. To maintain this writ, or to permit other and further proceedings than those directed by this court, would be to hold that controversies could never be ended by judicial sentence or decree. The cause, then, having been finally heard and tried, and only remanded that the court below might dismiss the bill, and issue execution for costs, from that court, instead of this, we have no hesitation in saying that the court below could not have done otherwise than deny the petition and dismiss the bill."

In *Wadhams* v. *Gay*, 83 Ill. 250, it was held that, where a chancery cause is decided in this court upon the merits, the opinion finding that there is no equity in complainant's bill, and the cause is remanded for further proceedings in conformity with the opinion, it is the duty of the lower court to dismiss the bill for want of equity; in that case, when the cause was first presented to this court, this court entered a judgment that the decree of the superior court of Cook county be reversed, "and that this cause be remanded to the superior court of Cook county for further proceedings in conformity with the opinion of the court herein filed," etc.; and, in that case, this court, speaking through the late Mr. Justice BREESE, said: "Here is a peremptory order for such proceedings, and such only, as shall be in conformity with the opinion filed. On the receipt of this mandate it was the duty of the superior court to examine the opinion and conform its action to it. * * * One of the great interests of the public is, that an end shall be put to litigation, and when a case has received full consideration in this court, and the merits fully explored, discussed and settled, and the cause remanded for further proceedings in conformity

to the expressed views and opinion of this court, there
can be no power remaining, in the court to which the
opinion and mandate are sent, to re-try the cause or do
any other matter or thing in the cause, but to obey the
mandate. The opinion of this court was on the merits—
they had been declared, by this court, against the com-
plainants. The mandate required of the superior court
the execution of the decree of this court, not a re-trial
of the cause or the entry of any order which might have
that effect, and which, unquestionably, was the design
of the party asking such an order. The authorities are
clear on this point."

The construction placed, in the cases of *Boggs* v. *Wil-
lard, supra,* and *Wadhams* v. *Gay, supra,* upon a judgment
of this court reversing a judgment of the lower court and
remanding the cause to the latter court for further pro-
ceedings "consistent with this opinion," or "not incon-
sistent with this opinion," or "in conformity with the
views expressed in this opinion," was also given to the
same form of judgment entered by this court in the fol-
lowing cases: *Newberry* v. *Blatchford,* 106 Ill. 584; *Hook* v.
*Richeson,* 115 id. 431; *Gage* v. *Bailey,* 119 id. 539; *Parker* v.
*Shannon,* 121 id. 452; *Gage* v. *Stokes,* 125 id. 40; *Buck* v. *Buck,*
119 id. 613; *West* v. *Douglas,* 145 id. 164; *Lynn* v. *Lynn,* 160
id. 307.

There is another line of cases, decided by this court,
which hold that, even where a cause is remanded gener-
ally by a court of review, it is not again open in the lower
court as to those questions presented by the record, and
decided by the court of review. (*Village of Brooklyn* v.
*Orthwein,* 140 Ill. 620; *Reed* v. *West,* 70 id. 479; *Rising* v.
*Carr,* id. 596; *Ogden* v. *Larrabee,* id. 510; *Champaign County*
v. *Reed,* 106 id. 389; *Loomis* v. *Cowen,* id. 660; *Smyth* v. *Neff,*
123 id. 310; *Tucker* v. *People,* 122 id. 583; *Burton* v. *Perry,*
146 id. 71; *Palmer* v. *Woods,* 149 id. 146.) In *Smyth* v. *Neff,*
*supra,* it was held that, where a case is brought to this
court and considered, its judgment as to all the points

and questions presented and decided will forever preclude the parties, and, if the case is again brought before it for review, such questions cannot be re-considered, and they will not be open for discussion.

In the light of the authorities above referred to, the judgment, entered by this court in the case of *People* v. *Theological Seminary, supra,* cannot be regarded otherwise than as final, so far as the question as to the exemption of the property here involved from taxation is concerned. If the appellant had re-instated the former case upon the docket in the county court, and again brought it to this court, the question, which we there determined, would not have been re-considered, and would not have been open for discussion. Here, although the parties and subject matter are the same as the parties and subject matter in the former actions, yet the cause of action is different. Consequently, the material question here is, what fact or matter was determined or adjudicated in the former actions, and such fact or matter may be shown by extrinsic evidence. Proof was introduced in this case to show what question was decided in the former actions, and proof has also been introduced to show what question was decided by the later judgment rendered by this court. It follows that the judgment rendered by this court, reversing the former judgment of the county court, in connection with the proof as to the question there involved, must be held to be an estoppel, as showing a former recovery or *res judicata.* It would be singular indeed, if the party, who had obtained the decision of an important question before the court of last resort, and obtained that decision in such a way that the question involved was finally settled between the parties, could not receive any benefit from such decision in a subsequent litigation where the same question was sought to be again raised.

Counsel for appellant, however, relies upon the case of *Aurora City* v. *West,* 74 U. S. 82, as supporting the con-

tention, that a reversal in a State court of last resort, remanding a case, cannot be set up as a bar to a judgment in an inferior court on the same case.   But an examination of *Aurora City* v. *West, supra,* will show that the decision in that case is not applicable to the facts in the case at bar.   There, the question came before the court upon a demurrer to a rejoinder, setting up merely that a judgment recovered in a county court of Indiana had been reversed by the Supreme Court of that State on appeal, and the cause remanded.   The question there was whether, upon demurrer, a rejoinder was good, which merely set up a judgment of reversal, accompanied by remandment of the cause for further proceedings, without any allegation or proof, so far as we can ascertain from the case, to show what the particular question was which was decided by the Supreme Court of Indiana.   In that case, the Supreme Court of the United States say: "The reversal of the judgment under the circumstances shown in the allegations of the rejoinder is not conclusive evidence that the complainants may not ultimately recover."   But in the case at bar—where the proceeding, which is upon objections filed in the county court, is heard and determined in a summary manner without pleadings and judgment is pronounced as the right of the case may be—a stipulation was entered into between the parties and appears in the record, which stipulation recites, "that appeal was taken by the said applicant to the Supreme Court of the State of Illinois, and that the Supreme Court of Illinois, June 18, 1898, filed the opinion of the court, as set forth in 174 Ill. at page 177, but that no mandate has been issued by the Supreme Court of Illinois, remanding such cause to the county court of Cook county, Illinois, and that no transcript of the order of the Supreme Court of Illinois, remanding the cause to the county court of Cook county has ever been filed in the county court of Cook county."   It thus appears that the opinion of this court in *People* v. *Theological Seminary,*

*supra*, is, by stipulation, made a part of the evidence in the case at bar.   The case as here presented, therefore, shows upon its face the particular question decided by this court and is not merely a general allegation, that a judgment of reversal and remandment for further proceedings was entered.   While it may be true that, as a general thing, a reversal remands nothing but its own correctness, and simply nullifies the former judgment or decree, declaring that it shall henceforth be void, yet, it may have a more extensive operation, either as a bar or as an estoppel, if it is shown that it directly affirms or denies some distinct fact in issue.   (*Harvey* v. *Richards*, 2 Gallison, 216).   The judgment of reversal here is shown to directly determine a distinct question which was in issue, and, therefore, it operates as a bar or estoppel.

Counsel for appellant lays great stress upon the fact, that no mandate was filed in the county court after the decision and judgment so as aforesaid rendered by this court.   Section 84 of the Practice act provides that "if neither party shall file such transcript within two years from the time of making the final order of the Supreme Court or Appellate Court, as the case may be, reversing any judgment or proceeding, the cause shall be considered as abandoned, and no further action shall be had therein." (3 Starr & Curt. Ann. Stat.—2d ed.—p. 3111).   It appears that, here, neither party, neither the present appellant nor the present appellee, filed any transcript within two years from the time of the rendition of the judgment of reversal by this court.   But the only consequence of such failure to file a transcript by either party is, not that the cause of action is considered as abandoned, but only that the particular suit shall be considered as abandoned, and no further action shall be had therein.   But the fact, that the appellant did not file a transcript and re-docket the case in the county court, and file additional objections, if he was entitled to do so, or take further proceedings in the court below, has no

effect, and can have no effect upon the validity and finality of the judgment rendered by this court, so far as the question here involved was determined and settled by that judgment.

Our conclusion upon this branch of the case is, that the judgment of reversal rendered by this court, as shown in the case of *People* v. *Theological Seminary, supra,* operated as a bar and complete defense against the previous judgments rendered by the county court, and relied upon by the appellant herein.

*Third*—The appellant also contends that, while the judgments of the county court were outstanding holding that its lands were exempt from taxation, appellant received from charitable donors certain lands, and also purchased a certain amount of real estate; and that it acquired the title to these lands, so given to it and purchased by it, relying upon the construction given to its charter by these judgments of the county court holding its lands exempt from taxation. The doctrine, thus invoked by the appellant, applies only to decisions made by State courts of last resort, and not to decisions by inferior State courts. In construing the statutes and constitutions of the different States, the Supreme Court of the United States, as a general rule, adopts such construction as has been placed thereon by the last decision of the highest judicial tribunal of the State. To this ruling, however, there is a well defined exception. Where, upon the faith of a decision of the highest tribunal of a State affirming the validity of contracts made or bonds issued under a certain statute, other contracts have been made or bonds issued under the same statute before the prior decision has been overruled, such contracts and bonds have been held to be valid upon the principle that the holders, upon purchasing such bonds, and the parties to such contracts, are entitled to rely upon the prior decision as settling the law of the State. (*Wade* v. *Travis County,* 174 U. S. 509). In cases where the rule has been

applied, there had been two decisions of the highest tribunal of the State, the one sustaining the validity of the bonds or contracts, and the other denying it; and where bonds had been purchased or vested rights had been acquired under the contract after the first decision and before the second, the Supreme Court of the United States, in passing upon the validity of the bonds or contracts, have said that they would not adopt the last decision of the Supreme Court of the State, but would adopt the first. This principle has no application to the case at bar, because, here, there was no decision of the highest tribunal of the State in favor of the contention here made by the appellant, but only a number of judgments rendered by an inferior tribunal in the State, to-wit, the county court of Cook county.

Accordingly, for the reasons above stated the judgment of the county court is affirmed.

*Judgment affirmed.*