## NELSON COFOID

v.

## WILLIAM A. BISHOP.

FORCIBLE ENTRY AND DETAINER.—The wife of appellant was entitled to possession and held the same as heir and tenant in common with other heirs of the former owner of the premises. There was no forcible entry and her possession was lawful. The possession of appellant, if any, was as the agent of his wife, and the action should have been against both. The result of a judgment against appellant would be the separation of husband and wife, or an ousting of one who had a right of possession, which in either case could not be done.

APPEAL from the Circuit Court of Putnam county; the Hon. O. A. HARKER, Judge, presiding. Opinion filed August 8, 1882.

Messrs. BARNES & MUIR, for appellant; that appellant being in possession in right of his wife, she should be joined in the suit, cited Whelan v. Fish, 2 Bradwell, 447.

Mr. W. H. CASSON and Messrs. SHAW & EDWARDS, for appellee; that appellee being in peaceable possession, forcible entry can not be made upon him, cited Hubner v. Feige, 90 Ill. 208; Baker v. Hays, 28 Ill. 387; Reeder v. Purdy, 41 Ill. 279; Smith v. Hoag, 45 Ill. 251; Allen v. Tobias, 77 Ill. 169; Farwell v. Warren, 51. Ill. 467; Huftalin v. Misner, 70 Ill. 205; Knight v. Knight, 3 Bradwell, 206.

LACEY, J. This was a suit in forcible entry and detainer commenced by appellee against appellant and his wife, Elizabeth A. Cofoid, in the circuit court, but before trial the suit on appellee's motion was dismissed as to Elizabeth A. Cofoid. The cause was tried by the court and jury, resulting in a verdict and judgment for possession for the whole premises in question and for costs of suit.

The suit was brought to recover the possession of a certain farm and dwelling-house described in the complaint, and was commenced February 23, A. D. 1882.

It appears from the evidence that the land and dwelling was possessed and claimed by Mrs. Carr, the mother of Mrs. Cofoid, and that she was an aged and feeble lady, a widow, living by herself in the house; that the house was neatly furnished and that the furniture all belonged to her, and it further appears that the appellee was an unmarried man without a family, and the only personal property he had was his trunk and clothes.

Mrs. Carr owned all the furniture of the house, even the bed appellee slept on. The contract of renting was a verbal one and the first contract between Mrs. Carr and appellee was from the first day of March, A. D. 1879, to the first day of March, 1880; he was to pay her grain rent and she was to remain in the house with all her furniture, and keep house, do the housework and furnish him a room with bed and board. This was the only possession of the house which he had any right to—simply that of a boarder, with the right to remain during the year.

This contract was renewed from year to year by special verbal agreement till March 1, A. D. 1882; about the 1st day of February, 1882, the appellee and Mrs. Carr renewed the lease by verbal contract for another year to commence March 1, 1882, and to run to March 1, 1883, which was void under the statute of frauds, as the contract was concerning an interest in land, and was not to be performed within a year.

In October, 1880, Scott Thomas, by consent of both parties, moved into the house and occupied several rooms, and Mrs. Carr's things were moved out of those rooms, and he remained there till January 24, A. D. 1882, when he moved out; during the time he stayed, Mrs. Carr and appellee both boarded with him.

After Thomas left, Mrs. Carr kept house and did the cooking, and appellee boarded with her and paid her two dollars per week. About the 9th of February, 1882, she was taken sick and went to her daughter, Mrs. Cofoid, taking her house keys with her, where she died on the 13th of the same month. Before leaving, she told appellee to get some one else to do the cooking, and he bargained with one Glass and family to come, the same as Thomas had done.

Cofoid v. Bishop.

·At the time Mrs. Carr went, she left all the furniture in the house, and it remained there till Mrs. Cofoid took possession on the 18th day of the same month.

When Mrs. Carr died, she left all her furniture by her will to Mrs. Cofoid, and she left as her heirs to the realty, her daughter, Mrs. Cofoid, and two grandchildren.

There can not be a doubt that if Mrs. Carr had recovered her health, she would have had a right to re-occupy the house and do the cooking and keeping house as she had done. It appears that she had a right to the possession and control of the house as housekeeper if she desired, and the only privilege appellee had was to board with her and occupy a room and bed, and if she failed he might procure others to do his cooking in the house.

Under these circumstances, Mrs. Cofoid became the legatee of all the furniture, and the heir, together with the grandchildren, to all Mrs. Carr's interest in the real estate, which in the absence of proof to the contrary, will be deemed the fee, subject to the lease of the appellee. In fact, she became the landlady of the latter. in place of Mrs. Carr. On the 23d of February, the same day the suit was commenced, the executor of Mrs. Carr turned over all the furniture to Mrs. Cofoid, under the will.

Mrs. Cofoid claimed to take possession of the house in her own right and that of the other heirs, they being tenants in common. Mrs. Cofoid did not assume, in taking possession of the house, to deprive appellee of his privileges under his lease with 'Mrs Carr; but he was allowed and invited to occupy his room and bed, and to board with them, the same as he had done with Mrs Carr; and he was invited to board free of expense till the first of April, A. D. 1882; but he only availed himself of the privilege of occupying his room and bed; Mrs. Cofoid keeping his room and bed in order, and was even doing so up to the trial.

We think the evidence clearly shows that there was no forcible or illegal entry on the part of Mrs. Cofoid on the possession of appellee. She only took the same possession that her mother had, in a peaceable manner, and is no more sub-

ject to this suit than her mother would have been, had she returned to claim the possession of the house reserved in the lease, and had again occupied it.

It appears, also, from the evidence, that there was no interference with appellee's possession of the farm till after the 1st of March, 1882, the time that appellee's valid lease expired; and whatever might be said in regard to such interference, it could not become a question in this suit, it having been commenced prior to that time.

It is contended that the appellant, the husband of Mrs. Cofoid, the heir, took possession of the house, and not his wife, but we think the evidence will not support such a claim; whatever he did was done as the agent of his wife. The possession was hers, and not his. Therefore, the possession being that of the wife, the suit should have been brought against her, as well as her husband.

If she had a right to remain there, so had he, for certainly they had a right to live together while the marriage relation existed. The result of this judgment against the husband would be that either the husband would be separated from the wife and removed from the house and place by the writ of possession, or she, who claims the possession in her own right, would be removed with her husband, and thereby deprived of the possession of her property without a hearing or trial. This, it has been decided, could not be done. Wheelan v. Fish, 2 Bradwell, 447.

Again, as Mrs. Cofoid claimed this property as the heir of her mother, it was important that she should have been a party, in which case appellee could not have been a witness. It is not necessary to notice the objection made to the instructions. Therefore, because the verdict was manifestly against the weight of the evidence, and because Mrs. Cofoid should have been made a party, appellant having no possession that he could be required to surrender, the judgment is reversed, and cause remanded.

Reversed and remanded.